UNITED STATES of America

v.

**Conan Curtis CULP.**

No. 96–9–CR–FTM–23.

United States District Court, M.D. Florida.

July 9, 1996.

---

Susan Daltuva, Asst. U.S. Atty., United States Attorney's Office, Ft. Myers, FL, for United States of America.

Stuart Pepper, Pepper Law Firm, Cape Coral, FL, for Defendant.

*Order and Opinion*

GAGLIARDI, Senior District Judge.

## I. Facts

In this case the Government has moved the Court to disqualify counsel for Defendant Conan Curtis Culp, Stuart Pepper, based on its allegations that Mr. Pepper's representation of Defendant would be a conflict of interest. Defendant is charged with conspiring to distribute large quantities of cocaine. Two of the Government's prospective witnesses—Carlos Valdes, and his son Douglas Wayne Valdes—who are co-conspirators in the crimes charged against Defendant, have also been represented by Mr. Pepper in the past.[1] On April 23, 1996, this Court held a hearing to determine whether a conflict of interest exists.

The parties do not dispute that Mr. Pepper represented Douglas Valdes at a *Nebbia* hearing in connection with federal narcotics charges which ultimately led to his cooperation in the instant case. *Tr. of Proceedings: Mot. to Determine Conflict of Interest, Apr. 23, 1996*, at 11:6–11. As part of that representation, Mr. Pepper had several conversations with Douglas Valdes. *Aff. of Stuart Pepper, Apr. 24, 1996*, at 2.[2] In addition, the parties do not dispute that Mr. Pepper represented Carlos Valdes in a state cocaine proceeding which is part-and-parcel of the drug conspiracy charged in this action. *Id.* at ¶ 8. Although both of the Government's witnesses have pleaded guilty to federal drug charges, neither has been sentenced at this time.

---

**1.** Mr. Pepper has also previously represented Douglas Valdes' other son, and another of the Government's prospective witnesses, Kenneth R. Valdes, in connection with an unrelated state charge. In addition, Mr. Pepper had several conversations with Kenneth Valdes which related to the *Nebbia* hearing held to obtain a bond for Douglas Valdes. However, the Government states in its motion that it does not know whether Mr. Pepper's prior representation of Kenneth Valdes is related to Kenneth Valdes' role in the drug conspiracy. *Government's Mot. to Determine Conflict of Interest, Apr. 9, 1996*, at ¶ 7. Thus, the Court will consider the alleged conflict of interest solely as it relates to Carlos and Douglas Valdes.

**2.** Mr. Pepper has also previously represented Douglas Valdes in connection with unrelated state charges.

At the hearing, Defendant testified that he was willing to waive his right to conflict-free counsel. Douglas Valdes and Carlos Valdes each in turn declined to waive their rights.

Mr. Pepper then attempted to make a proffer in order to show (1) that his representation of Douglas and Carlos Valdes had terminated; and (2) that no confidential communications were exchanged during his prior representation of them. The Court sustained objections to Mr. Pepper's attempts to elicit from his former clients information relating to his representation of them. *Tr.* at 22:14–24:11.

The Government introduced a letter dated March 12, 1996 sent to Mr. Pepper by the Assistant United States Attorney ("AUSA") prosecuting the case, advising Mr. Pepper of the Government's position that his representation of Defendant posed a conflict of interest. *Tr.* at 30:24–31:7. The AUSA stated that she believed a conflict existed from the beginning of her involvement in the matter, and repeatedly exhorted Mr. Pepper to withdraw from the representation. *Tr.* at 9:11–18. After he failed to heed the Government's importunings, the Government filed this motion.

## II. Arguments Presented

Mr. Pepper challenges the Government's standing to move for his disqualification. In addition, Mr. Pepper argues that the Government has failed to show that a conflict of interest exists, and that if such a conflict does exist, Defendant has knowingly and voluntarily waived his right to conflict-free counsel. The Government responds that because its cooperating witnesses, who are former clients of Mr. Pepper, have refused to waive their rights to conflict-free representation, Mr. Pepper must be disqualified. The Court agrees.

## III. Conclusions of Law

 This motion pits the defendant's constitutional interest in counsel of his choice against the competing interests of the defendant, the Court, the Government and two of

its potential witnesses in a trial free from conflicts of interest. The right of a criminal defendant to be represented by counsel of his choice, although comprehended by the Sixth Amendment, is not absolute. *Wheat v. United States,* 486 U.S. 153, 154, 108 S.Ct. 1692, 1694, 100 L.Ed.2d 140 (1988). As the Supreme Court has interpreted the Sixth Amendment, its "essential aim ... is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat,* 486 U.S. at 159, 108 S.Ct. at 1697. In *Wheat,* the Court considered the extent to which a defendant's right to be represented by an attorney of his or her choice is qualified by the attorney's past representation of other defendants charged in the same criminal conspiracy. *Id.* After considering the countervailing interests, the Court concluded that when a motion to disqualify based on an alleged conflict is raised prior to trial, a defendant's presumptive entitlement to retain counsel of his or her choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id.* at 164, 108 S.Ct. at 1700. Because the facts adduced with respect to this motion show at least a potential conflict of interest, the Court declines the Defendant's request to have Mr. Pepper represent him in this case.

 The Court finds on the basis of facts proven in the evidentiary hearing that Mr. Pepper labors under an intractable conflict of interest, since the vigorous representation of his present client will require him to act in a manner adverse to the interests of his former clients, Douglas and Carlos Valdes.[3] Although the simultaneous representation of clients with adverse interests is the most egregious form of a lawyer's conflict of interest, this Circuit has repeatedly held that successive representation may also give rise to an actual conflict. *Smith v. White,* 815 F.2d 1401, 1405 (11th Cir.1987); *United States v. Ross,* 33 F.3d 1507, 1523 (11th Cir.1994). Mr. Pepper's vehement protestations that he no longer represents any mem-

---

**3.** According to the Assistant United States Attorney prosecuting the case, Carlos Valdes may but will not necessarily be called as a rebuttal witness. *Tr.* at 33:18–23. The Government intends to call Douglas Valdes as part of its case-in-chief, however, and his testimony will be critical to its case. *Government's Mot. to Determine Conflict of Interest,* at ¶ 7.

bers of the Valdes family are therefore unavailing. Moreover, these assertions ignore the fact that a lawyer's duty to preserve client confidences survives the termination of the lawyer-client relationship. *Model Rules of Professional Conduct* (hereinafter "*Model Rules*"), Rule 1.6 cmt. at ¶ 22 ("The duty of confidentiality continues after the client-lawyer relationship has terminated."). To the extent that Mr. Pepper argues that he never represented Douglas Valdes, the Court refers him to Model Rule 1.2, entitled "Scope of the Representation," and Model Rule 3.3, entitled "Candor Towards the Tribunal."

▆▆ Because of the lawyer's continuing duty of confidentiality, the representation, be it simultaneous or successive, of more than one defendant charged in the same criminal conspiracy inevitably presents a conundrum for the lawyer who is so engaged. *Model Rules*, Rule 1.7 cmt. at ¶ 7 ("The potential for conflict of interest in representing several defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant."); *see also* Rule 1.9 cmt. at ¶ 1 (incorporating Rule 1.7 test for "adverse interests" into context of successive representation). This conundrum is posed most starkly where, as here, the lawyer's former client will testify against his current client as a witness for the Government. To vigorously defend his current client, the lawyer must cross-examine his former client in an effort to impeach the former client's credibility. The ethical canons thus present the lawyer with a Hobson's choice: the lawyer must either seek to elicit confidential information from the former client,[4] or refrain from vigorous cross-examination. Because the conflicting ethical imperatives under such circumstances place the defense lawyer in an untenable position, *Wheat*, 486 U.S. at 164, 108 S.Ct. at 1699–1700; *Ross*, 33 F.3d at 1523; representation under such circumstances is presumptively suspect. *Lightbourne v. Dugger*, 829 F.2d

1012, 1023 (11th Cir.1987) ("An attorney who cross-examines a former client inherently encounters divided loyalties"). The Court will not abandon the legal presumption that Culp will be adversely affected by this conflict merely because of Mr. Pepper's apparent willingness to compromise his ethical obligations to his former clients.

▆▆ Mr. Pepper states in his affidavit, however, that due to the limited nature of his representation of Douglas Valdes, he learned no information during the course of that representation which he could now use against Mr. Valdes. *Aff. of Stuart Pepper*, at 2–3.[5] This argument ignores the fact that under the ethical canons a duty of loyalty exists apart and distinct from the duty to maintain client confidences. *Compare Model Rules*, Rule 1.6 with Rules 1.7 & 1.9. One need only compare Model Rule 1.6, which outlines the lawyer's duty of confidentiality, with Model Rule 1.9(a), which imposes a blanket prohibition on the representation of clients with interests adverse to those of a former client without the former client's consent. The prohibition set forth in Rule 1.9 applies *without regard* to whether the prior representation entailed the disclosure of confidential communications. The rule thereby furthers two purposes simultaneously; it promotes the attorney's duty of loyalty to his clients while furthering the objectives of rules protecting confidential communications between attorney and client by obviating the need for intrusive judicial fact-finding that would require the disclosure of such communications. The policies underlying this rule are equally relevant here, for the Government's intended witnesses in this case, both of whom have not yet been sentenced for their own participation in the charged conspiracy, will be understandably loath to take the stand and refute Mr. Pepper's proffer by describing any of their own illegal activities which they may have disclosed to him.

---

4. The lawyer's duty of confidentiality prevents not only the disclosure of confidential communications, but also any use of such communications "to the disadvantage of the client." *Model Rules*, Rule 1.8(b); Rule 1.9 cmt. at ¶ 11.

5. Mr. Pepper's averrals are strikingly at odds with his stance during a related matter before this Court, the trial of Edna Simpson. During that trial Mr. Pepper, after being called as a hostile witness by the defense, invoked the attorney-client privilege on behalf of Douglas Valdes in response to insinuations by defense counsel that Pepper had suborned the perjury of Mrs. Simpson.

■ Under Rule 1.9(a), the proscription against successive representation is triggered when the representation of the former and present client involve "the same or a substantially related matter." *Model Rules* Rule 1.9(a); *Ross,* 33 F.3d at 1523 (firm disqualified where former client represented in connection with same narcotics conspiracy); *Smith v. White,* 815 F.2d 1401, 1405 (11th Cir.1987). Here, Mr. Pepper represented Douglas Valdes in the matter that led to his cooperation in the instant case, including appearing on Valdes' behalf at a *Nebbia* hearing. Mr. Pepper represented Carlos Valdes in a state cocaine proceeding for conduct which is "part-and-parcel" of the conspiracy charged in this case. Accordingly, the Court finds that an actual conflict of interest exists on these facts.

■ Notwithstanding its finding that an actual conflict exists in the case at bar, the Court unequivocally rejects Mr. Pepper's arguments that the Government must show the existence of an actual conflict before its motion may be granted. As the case law makes abundantly clear, a showing of a potential conflict alone will suffice at this stage. *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1700; *Ross,* 33 F.3d at 1523. Mr. Pepper's reliance on *Smith* and *Lightbourne* for the proposition that the Government must demonstrate an actual conflict of interest ignores the procedural posture in which those challenges were presented, and demonstrates his failure to appreciate the important distinction between post-conviction challenges asserted in *habeas corpus* petitions and motions filed prior to trial. Thus, although a defendant who raises no objection at trial must demonstrate in a collateral proceeding that an *actual* conflict of interest existed and that such conflict adversely affected his lawyer's performance at trial, *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), a defendant's presumptive right to counsel of his choice may be overcome before trial by a showing of a *potential* conflict. *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1700.

The reasons for this difference are clear enough. As the Supreme Court observed in *Wheat,* a trial judge presented with the specter of a prospective conflict must resolve the issues "in the murk[y] pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* at 162, 108 S.Ct. at 1699. At such time, "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Id.* Different interests are implicated, however, and a different standard applies, when a defendant uses collateral proceedings to attack the finality of his or her conviction. *Smith,* 815 F.2d at 1406. *See generally McCleskey v. Zant,* 499 U.S. 467, 490–92, 111 S.Ct. 1454, 1468–69, 113 L.Ed.2d 517 (1980) (discussing systemic reasons to protect finality of convictions).

Mr. Pepper's argument that the Government lacks standing to raise the issue of a potential conflict gives short shrift to the respective interests of the Government and the Court in ensuring that judgments remain intact on appeal. *Model Rules,* Rule 1.7 cmt. at ¶ 15 (Government may raise question of conflict). Under such circumstances, a trial court's inquiry is necessarily informed by "the legitimate wish of district courts that their judgments remain intact on appeal." *Wheat,* 486 U.S. at 161, 108 S.Ct. at 1698. *See also id.* at 160, 108 S.Ct. at 1698 ("[N]ot only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation."). The Eleventh Circuit has explicitly recognized the independent judicial interest at stake in cases involving the representation of multiple defendants. *Ross,* 33 F.3d at 1523–24; *see also Cuyler,* 446 U.S. at 351, 100 S.Ct. at 1719 (Brennan, J., concurring) ("[T]he Constitution also protects defendants whose attorneys fail to consider, or choose to ignore potential conflict problems."). Mr. Pepper's challenges to the Government's standing betray a conception of the interests at stake in this motion which is both unduly narrow and overly simplistic.

■ Mr. Pepper's underinclusive conception of the interests at stake also leads him to place undue reliance on his client's waiver, which he argues should singularly determine the Court's disposition of the motion to dis-

qualify him. The Supreme Court held in *Wheat* that, consistent with the independent judicial interest in conflict-free adjudication, courts are free to reject a client's waiver of conflict-free counsel. *Wheat*, 486 U.S. at 160, 108 S.Ct. at 1697–98; *Ross* at 1524. In *Wheat*, the Court upheld the district court's disqualification of the defendant's attorney despite the waiver by the defendant and by two of the attorney's former clients of their right to conflict-free counsel. *Id.* at 156, 108 S.Ct. at 1695. In contrast, both of the former clients in this case have refused to waive their rights. See *Model Rules*, Rule 1.9 cmt. at ¶ 12 ("Disqualification from subsequent representation is for the protection of former clients."); *see also* Rule 1.7 cmt. at ¶ 5 ("When more than one client is involved, the question of conflict must be resolved as to each client."). Because Defendant Culp is incapable of waiving either the rights of his attorney's former clients or the interests of the Court in the integrity of its procedures and the fair and efficient administration of justice, this waiver will not carry the day for Mr. Pepper.[6]

 As a last resort, Mr. Pepper objects that the Government's failure to bring its motion more promptly has prejudiced him because of the impending trial date. As the Court admonished him during the hearing, however, Mr. Pepper cannot in good conscience complain about a situation which is due in large part to his own professional derelictions. *Model Rules*, Rule 1.7, cmt. at ¶ 1 (representation should be declined where a conflict is apparent from inception); *id.* at ¶ 5 ("[W]hen a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent."); *Cuyler*, 446 U.S. at 346, 100 S.Ct. at 1717 ("Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest

arises...."). Any prejudice which has inured to the detriment of Defendant will be addressed at such time as it is properly raised before this Court by Defendant's substitute counsel.

For the reasons discussed above, the Government's motion to disqualify Mr. Pepper from the representation of Conan Curtis Culp in the instant case is granted.

So Ordered.

represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.
*Model Rules*, Rule 1.7, cmt. at ¶ 5.

---

**6.** Moreover, the Court questions whether Defendant's waiver was validly obtained, given the following commentary in the Model Rules:

[T]here may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer