624 S.E.2d 844

STATE of West Virginia ex rel. Paul M. Blake, Jr., Prosecuting Attorney, Petitioner

v.

The Honorable John W. HATCHER, Jr., Judge of the Circuit Court of Fayette County and Robert Eugene Carroll, Respondents

No. 32747.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 2005.

Decided Nov. 18, 2005.

Brian D. Parsons, Fayette County Assistant Prosecuting Attorney, Fayetteville, for Petitioner.

Michael T. Clifford, Bayliss & Phalen, PLLC, Montgomery, for Intervenor Charles G. Keenan.

BENJAMIN, Justice:

Paul M. Blake, Jr.,[1] Prosecuting Attorney of Fayette County, West Virginia, invokes the original jurisdiction of this Court seeking an Order reversing the Circuit Court of Fayette County, West Virginia's March 25, 2005 Order denying the State's motion to disqualify defense counsel, John R. Mitchell, Sr., in the matter of *State v. Robert Eugene Carroll,* Indictment No. 05–F–12. The basis of the State's motion before the circuit court was a claimed conflict of interest arising from defense counsel's prior representation of a State's witness and the witness's relatives in various criminal and civil proceedings. The circuit court denied the State's motion, find-

---

**1.** Paul M. Blake, Jr. is currently a circuit court judge.

ing the State did not have standing to seek to disqualify defense counsel. Upon our review of this matter, we find that the State may be afforded standing to seek disqualification of a criminal defense counsel. We also order that a writ of prohibition shall issue prohibiting the Circuit Court of Fayette County from further proceeding in the matter of *State v. Robert Eugene Carroll*, Indictment Number 05–F–12, until such time as a hearing is held in the matter and the circuit court determines whether or not John R. Mitchell, Sr. should properly be disqualified from serving as defense counsel in the underlying matter in light of the guidance provided herein.

## I.

### FACTS AND PROCEDURAL HISTORY

During its January 2005 term, the Fayette County grand jury returned Indictment Number 05–F–12 against Respondent Robert Eugene Carroll charging him with the crimes of Murder in the First Degree and Sexual Assault in the First Degree. The charges arise from the 1986 attack and murder of Cathy Faye Carroll, Respondent's estranged wife, and the sexual assault of her fifteen year old daughter.

Following John R. Mitchell, Sr.'s appearance as counsel for Mr. Carroll, the State filed a motion to disqualify Mr. Mitchell and his law firm as counsel for Mr. Carroll due to an alleged conflict of interest. The alleged conflict of interest arises from Mr. Mitchell's prior representation of Charles G. Keenan and Mr. Keenan's relatives.[2] Mr. Keenan has been designated as a material fact witness relative to the charges brought against Mr. Carroll. Neither party disputes that Mr. Mitchell's representation of Mr. Keenan

ceased shortly before the Carroll indictment.[3] The State's motion asserted that Mr. Mitchell's representation of Mr. Keenan "presents a real and substantial conflict of interest, making his further representation of Robert Eugene Carroll improper and unethical and give[s] the appearance of impropriety."

At the direction of the circuit court, Mr. Mitchell obtained an informal legal ethics opinion from the Office of Disciplinary Counsel. In a letter dated February 15, 2005, the Office of Disciplinary Counsel stated that the "situation appears to create an appearance of impropriety." The informal opinion expressed concern regarding Mr. Mitchell's ability to cross-examine Mr. Keenan without the disclosure of confidential information. It also questioned whether the earlier representation of Mr. Keenan could result in a material limitation of the scope of Mr. Keenan's cross-examination to the detriment of Mr. Carroll. Following a February 28, 2005 hearing on the State's motion, the circuit court entered an Order on March 25, 2005 denying the State's motion for lack of standing.

The Fayette County Prosecuting Attorney filed his Petition for Writ of Prohibition with this Court on May 24, 2005. On June 9, 2005, after consideration of the matters raised in the Petition and in Mr. Carroll's response thereto, this Court issued a rule to show cause why the requested writ should not be awarded. Subsequently, on June 22, 2005, Charles G. Keenan filed a Motion to Intervene in this matter, requesting both the disqualification of Mr. Mitchell from Mr. Carroll's defense and that any ruling of this Court protect the movant's interest in confidential communications made with Mr.

**2.** Mr. Mitchell defended Charles G. Keenan on a first degree murder charges brought in 2000. Mr. Mitchell's representation of Mr. Keenan included two appearances before this Court, including the reversal of Mr. Keenan's conviction for voluntary manslaughter. *See State ex rel. Keenan v. Hatcher*, 210 W.Va. 307, 557 S.E.2d 361 (2001) (dismissal of recidivist charges due to disqualification of prosecutor based upon conflict of interest) and *State v. Keenan*, 213 W.Va. 557, 584 S.E.2d 191 (2003)(reversal of voluntary manslaughter conviction and remand for new trial). Additionally, Mr. Mitchell represented Gary K. Skaggs, the brother of Mr. Keenan's wife, in a civil action arising from the death of Mr. Skaggs'

son, Fayette County civil action number 01–C–113. It appears that the civil litigation concluded in April 2005 and was unrelated to the charges pending against Mr. Carroll. The first degree murder charges asserted against Mr. Keenan are likewise unrelated to the incident for which Mr. Carroll has been charged. It appears that Mr. Keenan is currently awaiting the new trial which was ordered in 2003.

**3.** According to Mr. Carroll, Mr. Mitchell's representation of Mr. Keenan ceased September 14, 2004 upon Mr. Keenan's retention of substitute counsel.

Mitchell during Mr. Mitchell's representation of him. Specifically, Mr. Keenan expressed "fear that John R. Mitchell will be compelled to disclose some or all of those confidential communication[s] upon cross-examination of [Mr. Keenan] in order to publically discredit [Mr. Keenan's] testimony." Upon consideration of the record before this Court, the oral arguments of counsel and the pertinent legal authorities, we grant the writ, as moulded.

## II.

## STANDARD OF REVIEW

■ In Syllabus Point 4 of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), this Court set forth the test for determining the propriety of issuing a writ of prohibition. Therein we held:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). When considering the issuance of a writ of prohibition arising from a circuit court's ruling on a motion for disqualification, this Court has consistently found the same to be an appropriate method of challenge. *See State ex rel. McClanahan v. Hamilton*, 189 W.Va. 290, 296, 430 S.E.2d 569, 575 (1993); *State ex rel.*

*Keenan v. Hatcher*, 210 W.Va. 307, 311, 557 S.E.2d 361, 365 (2001); *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 198 W.Va. 587, 589, 482 S.E.2d 204, 206 (1996)(per curiam). The rationale for such a finding was succinctly set forth in *Ogden Newspapers*, wherein we stated:

The reason that a writ of prohibition is available in this Court to review a motion to disqualify a lawyer is manifest. If a party whose lawyer has been disqualified is forced to wait until after the final order to appeal, and then is successful on appeal, a retrial with the party's formerly disqualified counsel would result in a duplication of efforts, thereby imposing undue costs and delay. *See State ex rel. DeFrances v. Bedell*, 191 W.Va. at 516, 446 S.E.2d at 909. Conversely, if a party who is unsuccessful in its motion to disqualify is forced to wait until after the trial to appeal, and then is successful on appeal, not only is that party exposed to undue costs and delay, but by the end of the first trial, the confidential information the party sought to protect may be disclosed to the opposing party or made a part of the record. Even if the opposing party obtained new counsel, irreparable harm would have already been done to the former client. The harm that would be done to the client if it were not allowed to challenge the decision by the exercise of original jurisdiction in this Court through a writ of prohibition would effectively emasculate any other remedy.

*State ex rel. Ogden Newspapers, Inc.*, 198 W.Va. at 589–90, 482 S.E.2d at 206–7.

## III.

## DISCUSSION

The primary issue presented to this Court is whether the State has standing to seek disqualification of defense counsel in a criminal proceeding on the basis of a conflict of interest where defense counsel formally represented a State's witness. The circuit court found standing did not exist. We disagree.

■ Our prior decisions and the commentary to our *Rules of Professional Conduct* recognize that an opposing party may, in appropriate circumstances, bring a motion

for disqualification due to a conflict of interest. In Syllabus Point 1 of *Garlow v. Zakaib,* 186 W.Va. 457, 413 S.E.2d 112 (1991), we held:

> A circuit court, *upon motion of a party,* by its inherent power to do what is reasonably necessary for the administration of justice, may disqualify a lawyer from a case because the lawyer's representation in the case presents a conflict of interest where the conflict is such as clearly to call in question the fair or efficient administration of justice. Such motion should be viewed with extreme caution because of the interference with the lawyer-client relationship.

(Emphasis added); *see also State ex rel. Morgan Stanley & Co. v. MacQueen,* 187 W.Va. 97, 416 S.E.2d 55 (1992) (involving motion brought by defendant investment firm to disqualify the State's counsel on basis of conflict of interest where counsel also represented certain State employees whose conduct may be at issue in action to recover investment funds allegedly lost due to conspiracy between employees and investment firm). Moreover, Rule 1.7 of the *Rules of Professional Conduct* sets forth the general rules governing conflicts of interest. The Comment thereto states, in pertinent part:

> **Conflict Charged by an Opposing Party** Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. *When the conflict is such as to clearly call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, for it can be misused as a technique of harassment.*

W. Va. R. Prof. Cond. 1.7 Comment (emphasis added).

We recognize that the decisions cited above arise in the civil litigation context, rather than the criminal context herein presented. We further recognize that in criminal matters, an accused has certain constitutional rights relative to counsel under both the Sixth Amendment of the United States Constitution and Article III, Section 14 of the West Virginia Constitution. Although a criminal defendant has a right to the effective assistance of counsel pursuant to the Sixth Amendment and Article III, Section 14, the right to choice of counsel is not absolute. We have previously held that while an indigent defendant is entitled to competent counsel, he is not entitled to counsel of choice. Syl. Pt. 2, *Watson v. Black,* 161 W.Va. 46, 239 S.E.2d 664 (1977). Further, when addressing a criminal defendant's right to counsel of choice in light of the Sixth Amendment, the United States Supreme Court has stated "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) (involving disqualification related to dual representations). *See also United States v. Locascio,* 6 F.3d at 927, 931 (2d Cir.1993) (presumption in favor of choice of counsel may be overcome by actual or potentially serious conflict of interest); *United States v. O'Malley,* 786 F.2d 786, 789 (7th Cir.1986) (right to choice of counsel is not absolute); *United States v. Ross,* 33 F.3d 1507, 1523 (11th Cir.1994) ("The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial."); *State v. Needham,* 298 N.J.Super. 100, 688 A.2d 1135, 1136 (1996) (stating "while defendant is entitled to retain **qualified** counsel of his own choice, he has no right to demand to be represented by an attorney **disqualified** because of an ethical requirement.")(emphasis in original) (citations omitted); *State ex rel. Youngblood v. Sanders,* 212 W.Va. 885, 889, 575 S.E.2d 864, 868 (2002) (right to choice of counsel is not absolute). Where representation is affected by an actual conflict of interest, the defendant can not be said to have received effec-

tive assistance of counsel as required by the Sixth Amendment.[4]

The defendant's interest is not the only interest to be considered when ensuring the fairness and integrity of criminal trials. "[C]ourts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings are fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. at 1698. *See also, Locascio,* 6 F.3d at 931(same); *United States v. Cunningham,* 672 F.2d 1064, 1072, n. 7 (2d Cir.1982) ("We believe the government has a sufficient interest in preserving the integrity of a criminal proceeding in which one of its potential witnesses is a former client of defendant's counsel to allow the government to raise the question."); *United States v. Gotti,* 9 F.Supp.2d 320, 323 (S.D.N.Y.1998) ("courts are obligated to protect the integrity of judicial proceedings and to ensure the effectiveness of the assistance of counsel by eliminating actual conflicts and carefully regulating potential ones."); *Hanna v. State,* 714 N.E.2d 1162 (Ind.Ct.App.1999) (noting under principles announced in *Wheat,* trial courts "have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment" when alerted to conflicts of interest by one of the parties.). Recognizing this interest, the United States Courts of Appeals for the Fourth, Fifth and Eleventh Circuits have found the government *is under a duty* to raise defense counsel's potential conflicts of interest and move for disqualification, if necessary. *Tatum,* 943 F.2d at 379–80 (4th Cir.1991); *In re Gopman,* 531 F.2d 262, 265–6 (5th Cir.1976) (government's duty arises from the ethical duty of its attorney); *United States v. Migliaccio,* 34 F.3d 1517, 1528 (10th Cir.1994). We find these decisions persuasive.

While standing to raise a conflict of interest in a disqualification is generally vested with the client, an exception to this rule exists "where the interests of the public are so greatly implicated that a third party should be entitled to raise the conflict." *Lowe v. Experian,* 328 F.Supp.2d 1122, 1128 (D.Kan.2004). Considering its interest in the fairness and integrity of criminal trials, it is unsurprising that several courts have expressly recognized the government's (or State's) standing to move for the disqualification of defense counsel in light of an actual or potentially serious conflict of interest. *Cunningham,* 672 F.2d at 1072, n. 7 (government has sufficient interest in integrity of criminal proceeding to raise question of disqualification); *In re Gopman,* 531 F.2d at 265–6 (government, through its attorney, has standing to report ethical problems arising from attorney's dual representation of union and union officials during federal grand jury investigation of union activities); *United States v. Culp,* 934 F.Supp. 394, 399 (M.D.Fla.1996) (rejecting challenge to government's standing to bring motion to disqualify arising from defense counsel's prior representation of government witness); *United States v. Linton,* 502 F.Supp. 871, 876 (D.Nev.1980) (finding government has standing to move to disqualify defense counsel due to existence of conflict of interest or serious possibility of conflict of interest); *State v. Ehlers,* 262 Neb. 247, 631 N.W.2d 471 (2001) (holding State has standing to seek disqualification of defense counsel). While not specifically finding the government (or State) had standing to seek disqualification of defense counsel due to a conflict of interest, numerous other courts, including this Court, have reviewed lower courts' disqualification rulings on motions brought by the government (or State). *See, e.g., Wheat,*

---

4. As stated by the United States Court of Appeals for the Fourth Circuit in *United States v. Tatum,* 943 F.2d 370, 375 (4th Cir.1991):

> The effective performance of counsel requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation. More than a *mere possibility* of a conflict, however, must be shown. The Sixth Amendment is implicated only when the representation of counsel is adversely affected by an *actual* conflict of in-

terest. When counsel for a defendant in a criminal case has an actual conflict of interest when representing the defendant and the conflict adversely affects counsel's performance in the defense of the defendant, prejudice to the defense is presumed and a new trial must be ordered.

(Emphasis in original). *See also United States v. Ross,* 33 F.3d 1507, 1523 (11th Cir.1994) ("When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified.")

486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (government objection to proposed substitution of counsel due to dual representations); *Locascio*, 6 F.3d at 927 (2d Cir. 1993) ("house counsel" representation of "head" and "underboss" of alleged criminal enterprise and counsel as "unsworn witness"); *Ross*, 33 F.3d 1507 (11th Cir.1994) (former representation of prosecution witness); *United States v. Gotti*, 771 F.Supp. 552 (E.D.N.Y.1991) (counsel as witness and prior representation of government witnesses); *United States v. James*, 555 F.Supp. 794 (S.D.N.Y.1983) (prior representation of potential prosecution witness); *Lemaster v. Ohio*, 119 F.Supp.2d 754 (S.D.Ohio 2000) (former representation of co-defendant/witness); *People v. Ortega*, 209 Ill.2d 354, 283 Ill.Dec. 530, 808 N.E.2d 496 (2004) (former client as witness); *Hanna v. State*, 714 N.E.2d 1162 (Ind.Ct.App.1999) (dual representation); *State v. Kezer*, 918 S.W.2d 874 (Mo.Ct.App.1996) (counsel as witness for impeachment purposes); *State v. Needham*, 298 N.J.Super. 100, 688 A.2d 1135, 1136 (1996) (former client as principle witness); *State v. Catanoso*, 222 N.J.Super. 641, 537 A.2d 794 (1987) (president of former business client as witness); *Gonzalez v. State*, 117 S.W.3d 831 (Tex.Crim.App.2003) (counsel as potential witness); *State ex rel. Youngblood v. Sanders*, 212 W.Va. 885, 575 S.E.2d 864 (2002) (prior consultation with co-defendant's wife regarding incident and possible representation). In the criminal arena, the prosecutor is the guardian of the State's interest in the fairness and integrity of our criminal justice system. In discussing a prosecutor's duties with respect to criminal matters, this Court has previously held that "[t]he prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he ... must deal fairly with the accused as well as other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality[.]" Syl. Pt. 3, in part, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977). In light of the State's interest in the fairness and integrity of criminal trials and the recognized duties of a prosecutor, we now hold that the State of West Virginia, through the prosecuting attorney, has standing to move for disqualification of defense counsel in a criminal proceeding in limited circumstances where there appears to be an actual conflict of interest or where there is a significant potential for a serious conflict of interest involving defense counsel's former (or current) representation of a State witness.

In making a motion for disqualification of a criminal defendant's chosen defense counsel, the State bears a heavy burden of proving disqualification is necessary and justified. *United States v. Diozzi*, 807 F.2d 10, 16 (1st Cir.1986); *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir.1986); *Hanna*, 714 N.E.2d at 1165; *Ehlers*, 631 N.W.2d at 481; *Needham*, 688 A.2d at 1136; *Catanoso*, 537 A.2d at 796; *Gonzalez*, 117 S.W.3d at 837. "[B]ecause disqualification of a criminal defendant's chosen counsel raises problems of a constitutional dimension, it is a harsh remedy that should be invoked infrequently." *Ehlers*, 631 N.W.2d at 479 (citing *U.S. v. Gotti*, 9 F.Supp.2d 320 (S.D.N.Y.1998)). In *Wheat*, the United States Supreme Court noted that although a court "must recognize a presumption in favor of [a defendant's] counsel of choice," the presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164, 108 S.Ct. at 1700. *See also Locascio*, 6 F.3d at 931(same).

Upon the State's motion to disqualify counsel, a trial court "must balance two Sixth Amendment rights: (1) the right to be represented by counsel of choice and (2) the right to a defense conducted by an attorney who is free of conflicts of interest." *Ross*, 33 F.3d at 1523, *citing Wheat*, 486 U.S. at 160, 108 S.Ct. at 1697; *Ehlers*, 631 N.W.2d at 480, *citing Ross*. In addition, a trial court must balance "the constitutional right of the defendant to representation by counsel of his choosing with the court's interest in the integrity of its proceedings and the public's interest in the proper administration of justice." *United States v. Reese*, 699 F.2d 803, 805 (1983). *See also Cunningham*, 672 F.2d at 1070 ("[i]n determining whether the right of the accused to counsel of his own choosing should be honored in a particular case, we must balance the defendant's constitutional right against the need to preserve the highest ethical standards of professional responsi-

bility."); *United States v. James*, 555 F.Supp. 794, 797 (S.D.N.Y.1983) (same). Where the disqualification sought is based upon a conflict of interest with a government witness, "the decision to disqualify an attorney in a criminal case requires an evaluation of the interests of the defendant, the government, the witness and the public view of the circumstances of each particular case." *O'Malley*, 786 F.2d at 790. Consequently, "in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.'" *Wheat*, 486 U.S. at 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (quoting *United States v. Cronic*, 466 U.S. 648, 657, n. 21, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). "[E]ven the constitutional dimension of a criminal defendant's right to counsel of his choice does not give the defendant the right to take advantage of his preferred attorney's confidential knowledge gained from prior representation of the witness." *O'Malley*, 786 F.2d at 791–2 *quoting United States v. James*, 708 F.2d 40, 45 (2d Cir.1983).

Several courts have addressed the concerns which are raised by a motion to disqualify defense counsel in situations where a prosecution witness is defense counsel's former client. Such concerns are centered upon confidential information, its use in cross-examination of the former client and counsel's divided loyalties between current and former clients. Such concerns are valid in light of an attorney's ethical responsibilities to former clients which may preclude an attorney's representation of another. *See* W. Va. R. Prof. Cond. 1.9. Addressing conflicts of interest between current and former clients of a criminal defense attorney, the United States Court of Appeals for the Eleventh Circuit has noted:

Our goal is to discover whether the defense lawyer has divided loyalties that prevent him from effectively representing the defendant. If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate. Indeed, it is also true that disqualification is equally appropriate if the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications

with the former client or to advance the attorney's own personal interest. In short, the court must protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards.

*Ross*, 33 F.3d at 1523 (citations omitted). *See also Ehlers*, 631 N.W.2d at 480 (same). Similarly, the United States District Court for the Middle District of Florida has stated:

Because of the lawyer's continuing duty of confidentiality, the representation, be it simultaneous or successive, of more than one defendant charged in the same criminal conspiracy inevitably presents a conundrum for the lawyer who is so engaged. This conundrum is posed most starkly where, as here, the lawyer's former client will testify against his current client as a witness for the Government. To vigorously defend his current client, the lawyer must cross-examine his former client in an effort to impeach the former client's credibility. The ethical canons thus present the lawyer with a Hobson's choice: the lawyer must either seek to elicit confidential information from the former client, or refrain from vigorous cross-examination. Because the conflicting ethical imperatives under such circumstances place the defense lawyer in an untenable position, representation under such circumstances is presumptively suspect.

*Culp*, 934 F.Supp. at 398 (citations and footnote omitted).

The Illinois Supreme Court recently identified four non-exclusive interests or factors for a court to consider when determining whether the State has overcome the presumption in favor of a defendant's counsel of choice. Those considerations include:

(1) the defendant's interest in having the undivided loyalty of counsel; (2) the State's right to a fair trial in which defense counsel acts ethically and does not use confidential information to attack a State's witness; (3) the appearance of impropriety should the jury learn of the conflict; (4) the probability that continued representation by counsel of choice will provide grounds for overturning a conviction.

*People v. Ortega,* 209 Ill.2d 354, 283 Ill.Dec. 530, 808 N.E.2d 496, 502 (2004) (citing *People v. Holmes,* 141 Ill.2d 204, 152 Ill.Dec. 268, 565 N.E.2d 950 (1990)). The appearance of impropriety arising from counsel's cross-examination of a former client raises several distinct concerns including: (1) a perception that a State's witness may have unfairly aided a criminal defendant; (2) a perception that defense counsel may not vigorously cross examine his former client; and (3) a perception that defense counsel will use confidential information in the cross examination of his former client. *Needham,* 688 A.2d at 1137–38.

 Ever cognizant in the circuit court's mind when considering a State motion for the disqualification of defense counsel must be the State's motive for bringing the same. The circuit court must consider whether a situation truly involves an actual or serious potential for a conflict of interest or whether the State is instead seeking to deprive the defendant of his or her counsel of choice. As recognized by the United States Supreme Court

> Petitioner of course rightly points out that the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side; but trial courts are undoubtedly aware of this possibility and must take it into consideration along with all of the other factors which inform this sort of a decision.

*Wheat,* 486 U.S. at 163, 108 S.Ct. at 1692. *See also Comment* W. Va. R. Prof. Cond. 1.7 (warning such a motion may be "misused as technique of harassment.") We agree with the United States Supreme Court that the State's motive in bringing a motion for disqualification is an appropriate and necessary inquiry for the circuit court to determine in ruling on such a motion.

 We find the substantial case law from other jurisdictions cited above to be persuasive in considering the competing interests which must be balanced upon the State's motion to disqualify a criminal defendant's choice of counsel due to an alleged conflict of interest arising from counsel's former representation of a State's witness. Accordingly, we hold that where the State moves for disqualification of a criminal defendant's counsel of choice due to counsel's former representation of a State witness, the State bears a heavy burden of proving disqualification is necessary and justified. A presumption in favor of a defendant's choice of counsel exists. However, this presumption may be overcome where, in the court's view, the State demonstrates the existence of an actual conflict of interest or the significant potential for a serious conflict of interest. In determining whether a conflict of interest should overcome the presumption in favor of defendant's choice of counsel, the circuit court must balance: (1) the defendant's right to be represented by counsel of choice; (2) the defendant's right to a defense conducted by an attorney who is free of conflicts of interest; (3) the court's interest in the integrity of its proceedings; (4) the witness's interest in protection of confidential information; (5) the public's interest in the proper administration of justice; (6) the probability that continued representation by counsel of choice will provide grounds for overturning a conviction; and (7) the likelihood that the State is attempting to create a conflict in order to deprive the defendant of his counsel of choice. Factors which the circuit court should weigh in conducting this balance include, but are not limited to: (1) the potential for use of confidential information by defendant's counsel when cross-examining the State's witness; (2) the potential for a less than zealous cross-examination by defendant's counsel of the State's witness; (3) the defendant's interest in having the undivided loyalty of his or her counsel; (4) the State's right to a fair trial; and (5) the appearance of impropriety should the jury learn of the conflict. These factors are to be considered in light of the individual facts and circumstances of each case.

 Our holding today is meant to guide the circuit court's consideration of the State's motion to disqualify a criminal defense counsel. We recognize the difficulty in predicting conflicts which may become apparent during the course of a criminal trial and that the circuit court does not have the benefit of hindsight in making its determination. In light of these difficulties, the United States Supreme Court found the trial court should be afforded considerable latitude in making

its determination to disqualify a criminal defense attorney due to a conflict of interest. *Wheat,* 486 U.S. at 163–64, 108 S.Ct. at 1699–1700. Recognizing the trial court's need for latitude, several courts have applied an abuse of discretion standard when reviewing decisions on disqualification motions. *See Locascio,* 6 F.3d at 931; *O'Malley,* 786 F.2d at 793; *Lemaster,* 119 F.Supp.2d at 765; *Ortega,* 283 Ill.Dec. 530, 808 N.E.2d at 500; *Gonzalez,* 117 S.W.3d 831. We agree that this is the appropriate standard of review.

 Although the circuit court is afforded discretion in its balance of competing interests, an adequate record must be made for review. We have previously held:

> Before a circuit court disqualifies a lawyer in a case because the lawyer's representation may conflict with the *Rules of Professional Conduct,* a record must be made so that the circuit court may determine whether disqualification is proper. Furthermore, this Court will not review a circuit court's order disqualifying a lawyer unless the circuit court's order is based upon an adequately developed record. In the alternative, if the circuit court's order disqualifying a lawyer is based upon an inadequately developed record, this Court, under appropriate circumstances, may remand a case to the circuit court for development of an adequate record.

Syl. Pt. 5, *Garlow.* In light of the significant constitutional interests at stake when the State seeks to disqualify a criminal defense counsel and the need for an adequate record for review, we hold that a circuit court presented with a motion by the State to disqualify a criminal defense counsel due to a conflict of interest arising from counsel's former representation of a State witness shall hold a hearing to afford the State, the defendant and the State's witness an opportunity to present evidence regarding their competing interests. The circuit court shall not require the client to disclose confidential information during the hearing, but may, in appropriate circumstance where there is a significant question regarding the possibility of disclosure of confidential information at trial, conduct an *in camera* review of the purported confidential information. The circuit court shall set forth its findings and ruling in a manner adequate for review.[5]

## IV.

## CONCLUSION

 This Court finds the State to have standing to seek the disqualification of a criminal defense attorney due to a conflict of interest arising from counsel's former representation of a State's witness. Accordingly, we grant the writ as moulded and remand this matter for proceedings consistent with this opinion order.

**WRIT GRANTED AS MOULDED.**

Justice BENJAMIN delivered the opinion of the Court.

Justice DAVIS concurs and reserves the right to file a concurring opinion.

DAVIS, J., concurring.

(Filed Dec. 6, 2005)

In this case, the majority opinion has held that the State of West Virginia has standing to move for the disqualification of defense counsel in a criminal proceeding in limited circumstances. I concur in this holding, and write separately to reconcile this holding with the position I took in my concurring opinion in *State ex rel. Youngblood v. Sanders,* 212 W.Va. 885, 894, 575 S.E.2d 864, 873 (2002). In *Youngblood,* I expressed my view that the State did not have standing to disqualify defense counsel. I observed in my separate opinion in *Youngblood* that " 'as a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.' " 212 W.Va. at 894, 575 S.E.2d at 873 (quoting *United States v. Rogers,* 9 F.3d 1025, 1031 (2d cir.1993)). Moreover, I pointed out that the "implied" client who potentially stood to be prejudiced by the lawyer's representation in *Youngblood* had "chos[en] not to seek disqualification." 212 W.Va. at 895, 575 S.E.2d at 874.

5. It is, of course, the obligation of defense counsel in the first instance to proceed in a manner consistent with counsel's obligations under the *West Virginia Rules of Professional Conduct.*

The instant case may be distinguished from the circumstances presented in *Youngblood.* In this case, the witness who was a former client of the defense attorney has intervened in this matter and has asked that his former counsel be disqualified. Furthermore, because Syllabus point 4 of the majority opinion has set forth criteria for the circuit court's decision of whether to grant a motion to disqualify defense counsel that necessarily requires the participation of the former-client/witness, it will be impossible for the State to pursue such a motion completely on its own.

Because the State will be unable to pursue disqualification of defense counsel without the participation of the former client, the concerns expressed in my separate opinion in *Youngblood* will not arise. Accordingly, I respectfully concur with the opinion of the Court.