# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0602** (Kanawha County 16-F-158)

**Antonio C. Williams,**
**Defendant Below, Petitioner**

**FILED**
**June 18, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Antonio C. Williams, by counsel Matthew D. Brummond, appeals the order of the Circuit Court of Kanawha County that disqualified his retained counsel from representing him in connection with this criminal law matter. The State of West Virginia, by counsel Benjamin F. Yancey, III, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case stems from a murder which occurred on January 1, 2016, in Charleston, West Virginia. On that date, petitioner became aware that his girlfriend, Jaylynn Stephenson, had been in an intimate relationship with another man, Lamar Coles. Per the State, petitioner demanded that Ms. Stephenson take him to the place where she had been with Mr. Coles. Petitioner, Ms. Stephenson, Sean Burdette, and a juvenile, G.T., drove to the residence. Upon their arrival, petitioner and Ms. Stephenson exited the vehicle and walked to the back of the house where the kitchen was located. Through the kitchen window, petitioner saw people sitting at the kitchen table, pulled out a gun, and began firing shots through the kitchen window. Shannon Cade, along with his younger sister, and another juvenile, C.K., were sitting at the table. Shannon Cade and C.K. were both hit by the gunfire, and Mr. Cade died as a result of his gunshot wounds. C.K. was treated for her wounds and was released from the hospital.

Petitioner left the scene and eventually went to Morgantown, West Virginia. On January 5, 2016, petitioner was arrested in Morgantown. Tequan Pratt, petitioner's half-brother, was present during the arrest. Although Mr. Pratt was not present at the scene of the crime, petitioner

1

used Mr. Pratt's vehicle to drive to the scene of the crime and later to Morgantown following the incident.

On March 31, 2016, a Kanawha County Grand Jury returned a three count indictment against petitioner charging him with the first-degree murder of Shannon Cade; the malicious wounding of a juvenile, C.K.; and wanton endangerment with a firearm. Petitioner was appointed an attorney, Tom Price, to represent him for the charges in the indictment. On April 14, 2016, the State provided Mr. Price with the State's initial discovery packet, which included a witness list and provided that the "State may call any and all persons identified in this packet." The discovery included interviews with several individuals including petitioner, Mr. Burdette, G.T., and Mr. Pratt. The State's discovery also disclosed police reports, which included Mr. Pratt's name numerous times as (1) he was with petitioner when he was arrested; (2) he gave a statement to the police at the time of petitioner's arrest; and (3) it was Mr. Pratt's vehicle that petitioner used to leave the murder scene and to travel to Morgantown following the murder.

Petitioner retained Mark Plants to represent him. On September 6, 2016, Mr. Plants filed a notice of appearance as counsel for petitioner and also filed a motion to continue petitioner's trial, which was granted.[1] On November 21, 2016, the State provided Mr. Plants with a copy of the discovery materials that it had disclosed to petitioner's prior counsel.

On November 8, 2016, Mr. Pratt also hired Mr. Plants to represent him in connection with an unrelated felony drug charge. On April 5, 2017, Mr. Pratt appeared in the Magistrate Court of Kanawha County with Mr. Plants as his attorney, and he pled guilty to domestic battery on the advice of Mr. Plants.

On April 7, 2017, the prosecuting attorney realized that a conflict of interest existed with Mr. Plants' representation of both petitioner and Mr. Pratt after the prosecuting attorney and Mr. Plants engaged in plea discussions on petitioner's case as well as on Mr. Pratt's unrelated drug case. Knowing that Mr. Pratt was a potential witness in the case against petitioner, the State alerted Mr. Plants of the potential conflict by e-mail on April 7, 2017. Per the e-mail, the prosecuting attorney informed Mr. Plants that the State had two active felony cases against Mr. Pratt. Per the State, Mr. Pratt gave a recorded statement to the police, which was turned over to petitioner's initial counsel and later turned over to Mr. Plants after he was retained by petitioner. The prosecuting attorney informed Mr. Plants that she believed Mr. Pratt had information that would necessitate him testifying for the State in its case against petitioner, and thus, Mr. Plants should withdraw from petitioner's case. At that time, the prosecuting attorney informed Mr. Plants that if Mr. Pratt was not on the State's witness list it was apparent that he should be, and the prosecuting attorney would provide Mr. Plants with a supplemental witness list.

After watching Mr. Pratt's statement to police, the prosecuting attorney advised Mr. Plants that she believed that Mr. Pratt had information that she wished to explore through a plea agreement with Mr. Pratt conditioned on his cooperation with the State in its case against petitioner. She informed Mr. Plants that she could not do so because Mr. Plants represented both

---

[1] Petitioner's trial was later continued until April 17, 2017, because one of the witnesses was unavailable for trial.

petitioner and Mr. Pratt. She further advised that she intended to call Mr. Pratt to testify but would have to speak with him about his testimony, which again presented a conflict. She informed Mr. Plants that she would be sending a supplemental witness list, which she did on the same day, April 7, 2017.

On April 10, 2017, petitioner filed a motion to exclude Mr. Pratt from testifying at his trial, along with two conflict of interest waivers, which had been signed by petitioner and Mr. Pratt. On the following day, the prosecuting attorney filed a motion to disqualify Mr. Plants as petitioner's counsel due to the conflict of interest. The prosecuting attorney's motion also addressed petitioner's motion to exclude Mr. Pratt from testifying at petitioner's trial.

On April 14, 2017, the State extended a plea offer to Mr. Pratt conditioned on his cooperation against petitioner. Three days later, on April 17, 2017, a hearing was held before the circuit court on the State's motion to disqualify Mr. Plants. At the hearing, Mr. Plants stated that he had not presented the State's plea offer to Mr. Pratt. He further stated that Mr. Pratt would not enter into such a plea conditioned on his cooperation with the State. Mr. Plants stated that both petitioner and Mr. Pratt had signed waivers against any conflict of interest and he had spoken with the Office of Disciplinary Counsel ("ODC") who informed that "it would be fine" for him to continue representing both petitioner and Mr. Pratt. The circuit court granted the State's motion by order dated April 27, 2017, and disqualified Mr. Plants from representing petitioner at his trial. The disqualification order provided as follows:

1. The State has standing to move the Court for disqualification of Mr. Plants as attorney in both the cases of Defendant Williams [Petitioner] and State's Witness/Defendant Pratt.
2. The Court has broad discretion in considering the disqualification of defense counsel in cases of actual conflict and potential for serious conflict.
3. An actual and potential conflict exists where an attorney represents both a defendant and a witness against that same defendant.
4. The extension of a plea offer [from the State] to State's witness/Defendant Pratt while counsel for Pratt [Mr. Plants] also represents Defendant Williams creates an actual conflict in both the cases of Defendant Williams and Defendant Pratt.
5. For example, any agreement made by Mr. Plants and State's Witness/Defendant Pratt which includes cooperation against Williams would be directly adverse to Mr. Plants' client, Defendant Williams.
6. In the same vein, if Mr. Plants were to advise his client, State's witness/Defendant Pratt, against considering the plea offer, there exists the potentially adverse consequences to Mr. Plant's [sic] client Pratt and unfairly favorable to his other client Defendant Williams.
7. Therefore, continued dual representation of Williams and Pratt by counsel Mr. Plants violates both Defendants' interest in having the undivided loyalty of his counsel[.]
8. Further, the filing of a motion to exclude State's witness/Defendant Pratt [by Mr. Plants] from the case of Defendant Williams was not in the best interest of Pratt when Pratt could potentially avoid multiple felony convictions in exchange for cooperation against Williams.

3

9. Mr. Plants was on notice of the serious potential conflict created by his dual representation of Williams and Pratt from both the discovery letter and the production of witness Pratt's statement by the State on November 21, 2017.
10. Moreover, Mr. Plants gained privileged information about State's witness/Defendant Pratt based [on] his representation of Mr. Pratt in a plea of guilty to the offense of domestic battery on April 5, 2017.
11. Therefore, the potential exists for use of privileged information by Mr. Plants when cross-examining State's witness/Defendant Pratt during the trial of Mr. Williams.
12. Further it is both in the public's interest in the proper administration of justice and the State's interest in a fair trial, that the State be allowed to adequately prepare for trial by discussing with unbiased counsel the possible testimony of Pratt in exchange for leniency.
13. Based on the aforementioned, continued representation by Mr. Plants of defendant Williams and State's witness/defendant Tequan Pratt is a clear conflict of interest and violation of Rule 1.7(a) of the West Virginia Rules of Professional Responsibility.
14. This existing conflict and potential for further serious conflict in both cases raises a significant probability that allowing continued dual representation by Mr. Plants would provide grounds for overturning a conviction in one or both cases.
15. Therefore, the factors set forth in *State ex rel. Blake v. Hatcher*, 218 W. Va. 407, 624 S.E.2d 844 (W.Va. 2005) are met.
16. Further, the submission of waivers by Defendant Williams and State's witness/Defendant Pratt do[es] not cure the actual conflict.
17. Finally, Mr. Plants' representations of opinions not reduced to writing and signed by counsel for the ODC pursuant to Rules of Lawyer Disciplinary procedure 2.15 are not binding [on] the Court.

Petitioner's bifurcated trial occurred in March 2019, and he was represented by appointed counsel, Michael Payne and Kevin Davis, at trial. At the end of the guilt phase of the trial, the jury convicted petitioner on all counts of the indictment, including first-degree murder, malicious wounding, and wanton endangerment. During the punishment phase, the jury recommended mercy.

Petitioner's sentencing hearing occurred on June 5, 2019, and the trial court sentenced petitioner to life in the penitentiary with mercy for his conviction of first-degree murder; two to ten years in the penitentiary for his conviction of malicious wounding; and five years for his conviction of wanton endangerment. The court ordered that petitioner's sentences run consecutively. Following entry of the sentencing order, petitioner filed this appeal challenging the disqualification of his retained counsel.

Petitioner asserts two related assignments of error stemming from the circuit court's order which disqualified petitioner's retained counsel. First, petitioner asserts that the circuit court erroneously disqualified his counsel because of a conflict that was manufactured by the State. Second, petitioner asserts that the circuit court violated the Sixth Amendment Counsel Clause by not giving any weight to the prosecuting attorney's bad faith. Inasmuch as these assignments of error are interrelated, we will address them together.

Although the Sixth Amendment protects the right of an accused to his or her choice of counsel, the Sixth Amendment right to choice of counsel is not absolute, and the authority to order disqualification of a counsel is vested with the trial court. *See* Syl. Pt. 2, *State ex rel. Blake v. Hatcher*, 218 W. Va. 407, 624 S.E.2d 844 (2005).

This Court has held that:

> Where the State moves for disqualification of a criminal defendant's counsel of choice due to counsel's former representation of a State witness, the State bears a heavy burden of proving disqualification is necessary and justified. A presumption in favor of a defendant's choice of counsel exists. However, this presumption may be overcome where the State demonstrates that an actual conflict of interest exists or that there exists a significant potential for a serious conflict of interest. In determining whether a conflict of interest should overcome the presumption in favor of defendant's choice of counsel, the circuit court must balance: (1) the defendant's right to be represented by counsel of choice; (2) the defendant's right to a defense conducted by an attorney who is free of conflicts of interest; (3) the court's interest in the integrity of its proceedings; (4) the witness's interest in protection of confidential information; (5) the public's interest in the proper administration of justice; (6) the probability that continued representation by counsel of choice will provide grounds for overturning a conviction; and (7) the likelihood that the State is attempting to create a conflict in order to deprive the defendant of his counsel of choice. Factors which the circuit court should weigh in conducting this balance include, but are not limited to: (1) the potential for use of confidential information by defendant's counsel when cross-examining the State's witness; (2) the potential for a less than zealous cross-examination by defendant's counsel of the State's witness; (3) the defendant's interest in having the undivided loyalty of his or her counsel; (4) the State's right to a fair trial; and (5) the appearance of impropriety should the jury learn of the conflict. These factors are to be considered in light of the individual facts and circumstances of each case.

*Blake*, 218 W. Va. at 410, 626 S.E.2d at 847, syl. pt. 4.

Guided by the principles set forth in *Blake*, the trial court issued its detailed disqualification order finding that the State met the heavy burden of proving that disqualification of Mr. Plants was both necessary and justified.[2] When the State realized that there was a conflict, the prosecuting attorney timely informed petitioner's retained counsel. Further, the trial court found that the

---

[2] Inasmuch as this case does not deal with joint representation in the context of two or more individuals who have been jointly charged pursuant to Rule 8(b) of the West Virginia Rules of Criminal Procedure or who have been joined for trial pursuant to Rule 13 of the West Virginia Rules of Criminal Procedure, the circuit court order appropriately did not address Rule 44(c) of the West Virginia Rules of Criminal Procedure. *See State ex rel. June Yurish, et al. v. Faircloth*, No. 19-1160, 2020 WL 2820382, __ W. Va. __, __ S.E.2d __ (W. Va. filed May 28, 2020).

submission of conflict waivers by petitioner and Mr. Pratt could not cure the actual conflict present in this case. It is undisputed that petitioner used Mr. Pratt's vehicle as transportation to carry out the murder of Shannon Cade, as well as to transport petitioner to Morgantown following the murder. Further, Mr. Pratt was present when petitioner was arrested, and he gave a statement to the police. Given those undisputed facts, we see no deception in the State's efforts to secure Mr. Pratt's cooperation in its prosecution of petitioner. Therefore, despite petitioner's argument to the contrary, there was insufficient evidence to suggest that the State manufactured a conflict in order to disqualify petitioner's chosen counsel.

Further, petitioner asserts that the trial court committed error when it failed to address a material factor in its disqualification order: petitioner's claim that the State's attorney acted in bad faith by manufacturing a conflict of interest in this case so as to disqualify Mr. Plants. Although the trial court order did not specifically address this allegation, it was raised below, and all of the relevant facts in that regard were presented to the circuit court. Petitioner suggests that this Court should reverse his conviction due to a mere oversight in the order, a suggestion that we decline to follow. The circuit court's disqualification order indicates that it ruled upon the motion after hearing arguments of counsel, and it is clear from the record that Mr. Plants argued at length during the hearing that the State manufactured a conflict of interest in this case to disqualify him. It is disingenuous for petitioner to now claim that the trial court did not consider this material factor that was discussed extensively at the hearing. Accordingly, we refuse to disturb the order on appeal that includes substantial, complete, and compelling findings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 18, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

6